# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RANDY BINGHAM and JESSICA LYN BINGHAM, | ) ) ) | |
| | ) | Case No. 22-00494 |
| Debtor. | ) | Chapter 7 |
| | ) | Judge Hunt |
| | ) ) ) | |
| JOHN McHUGH and LISA McHUGH, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RANDY BINGHAM, | ) ) | Case No. <u>22 A 00043</u> |
| Defendant. | ) ) ) | |

## ANSWER TO AMENDED COMPLAINT

NOW COMES the Defendant, Randy Bingham, by and through his attorney, David P. Lloyd, and, as his answer to the Amended Complaint, states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

RESPONSE: Admits.

2. Venue of the above-captioned case (the "Case"), and of this adversary matter are

proper in this Judicial District pursuant to 28 U.S.C. §§ 1408 and 1409.

RESPONSE: Admits.

3. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and/or (O).

RESPONSE: Admits.

4. On January 15, 2022, Randy L. Bingham (the "Debtor") filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code in this Court, along with his spouse, Jessica Lyn Bingham, as his co-debtor.

RESPONSE: Admits.

5. The McHughs are scheduled as unsecured disputed creditors, and thus have standing to bring this adversary proceeding.

RESPONSE: Admits.

6. The McHughs at all relevant times were husband and wife homeowners of a single family detached residence at 13076 Birch Path Court, Lemont, Cook County, Illinois.

RESPONSE: Admits.

7. Defendant Randy Bingham, also the debtor in this case, was an individual, and prior to the petition date was doing business as a contractor from an address at 15780 Valley View Street, New Lenox, Will County, Illinois, which he has listed in his Chapter 7 petition as his personal residence as of the petition date.

RESPONSE: Admits.

8. Defendant represented to the McHughs that he was doing business as Bingham Construction Services, LLC, an Illinois Limited Liability Company, but in fact that LLC was

involuntarily dissolved on or about September 9, 2020, prior to any of the events relevant to this matter, and it was never reinstated.

> RESPONSE: Admits.

9. At all relevant times, despite identifying himself as an LLC, because no LLC was able to lawfully conduct business in Illinois at the relevant time, Defendant Randy Bingham was in fact doing business for himself as a sole proprietorship.

> RESPONSE: Paragraph 9 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

10. Shortly before April 1, 2021, the McHughs contacted Defendant Bingham, who advertised his services as a contractor, and told him that they wished to construct a new outdoor patio and pavilion at their home located at 13076 Birch Path Court, Lemont, Illinois 60439 (hereinafter referred to as the "Lemont Home").

> RESPONSE: Admits.

11. The McHughs drafted a written contract, which Randy Bingham accepted, signing on April 16, 2021 (the "Contract").

> RESPONSE: Admits.

12. Prior to entering into the Contract, John McHugh and Randy Bingham reviewed and discussed the general scope of the project, confirming their agreement that Defendant was to perform construction services according to certain architectural plans, and in that conversation, Bingham told John McHugh that he was licensed, qualified and able to act as the general contractor as to all aspects of the project as described in the Contract.

> RESPONSE: Denies. Defendant did not intend to be the general contractor, as

Plaintiffs had undertaken the planning of the project and Defendant considered one or more of the Plaintiffs to be general contractor.

13. Among other things, the Contract states the parties' agreement to Bingham's performance specifically as:

   a. Defendant was to construct, pursuant to an agreed scope, the following areas of the Lemont Home: the outdoor patio, fireplace, and pavilion for a total payment of $71,000.00;

   b. That upon payment of $24,000, Defendant would begin work;

   c. That the project was to be completed on or about May 28, 2021;

   d. That Bingham would use licensed subcontractors, and would provide invoices and receipts for costs outside of delineated scope, to be approved by McHughs, before moving forward;

   e. That all of Defendants work was, at a minimum, to be workmanlike, and compliant with applicable building codes, and plans provided by architect.

RESPONSE: Admits.

14. In addition to the initial $24,000 to be paid to Defendant, The McHughs agreed to pay Defendant an additional $24,000 upon completion of structure and backfill, an additional $12,000 upon completion of hardscape, and the balance of upon final completion.

RESPONSE: Admits.

15. Defendant Randy Bingham signed the Contract and John McHugh paid the initial deposit of $24,000.00 to Randy Bingham on April 16, 2021, at the Lemont Home. This was the first and only time that Randy Bingham was ever on site at the project.

RESPONSE: Admits.

16. From the moment after hands were shaken, and money exchanged, Bingham utterly failed to perform every single duty as prescribed to him as a general contractor.

RESPONSE: Denies.

17. In fact, when he contracted with the McHughs, defendant was in substantial amounts of debt to over 50 different creditors, including over 30 credit cards which he and his wife had "maxed out."

RESPONSE: Denies. The contract was between Plaintiffs and Bingham Construction Services, LLC.

18. Bingham never intended to perform the agreed upon work for the McHughs, and instead his main goal was to extract money from them that he could use to live on and to move his family to Florida. Bingham was motivated in part by the fact that he was in deep debt, was facing lawsuits, had exhausted all borrowing capabilities, and was rapidly running out of money.

RESPONSE: Denies.

19. Among other things, after accepting the role of General Contractor, Bingham's very

first task was to assume the work permits for the job, as requested by the McHughs since they had proactively obtained temporary permits in their own name at their own expense to get the job started immediately.

RESPONSE: Denies.

20. Despite his representations to the contrary, Bingham did not assume the permit because unbeknownst to the McHughs he was not actually licensed in Lemont as a general contractor. But instead of telling this to the McHughs, he made serial excuses to them about why he was unable to transfer the permit to his name.

RESPONSE: Denies.

21. Eventually, Bingham refused to perform his duties as general contractor and refused to take over the permit, because he was legally barred from doing so since he was not licensed in Lemont as a contractor. As a result, the Village of Lemont stopped work on the project, causing McHughs to sustain financial losses and delays.

RESPONSE: Denies.

22. Defendant's second immediate task after accepting the role of General Contractor was to order materials for the job, and the McHughs had provided him $24,000 specifically earmarked for this purpose.

RESPONSE: Denies.

23. Despite representing to the McHughs that he had paid for materials with their money, Defendant did not actually or procure materials claimed to be ordered, after receipt of Plaintiff's payment of $24,000.00.

RESPONSE: Denies.

24. In actuality, part of the reason that Bingham was unable to perform these two

immediate tasks before him, was, on information and belief, because Bingham and his family had moved to Florida, and he needed the McHughs money to pay for relocating his family. Indeed, defendant's co-debtor, his wife, lists her place of residence in the Chapter 7 petition as Venice, Florida, where she resides along with their two daughters.

RESPONSE: Denies.

25. Defendant and his wife, the co-debtor, are not separated, and Bingham had been moving his family to Florida at the time he was receiving money from the McHughs, and thus never intended to apply that money to the McHughs project, but instead planned to use it for his own living and moving expenses.

RESPONSE: Denies.

26. The McHughs only learned that Bingham had moved his family to Florida from Bingham's neighbor after Bingham took their money and left Illinois without telling them.

RESPONSE: Defendant is not familiar with the mental processes of the Plaintiffs and therefore is unable to admit or deny.

27. To add to his misrepresentations, much of the money given to Bingham was earmarked for various subcontractors, but instead Bingham kept the money for himself. Bingham again made serial excuses to the McHughs about this, including in at least one instance fabricating a false story about a subcontractor who was alleged by Bingham to be suffering from COVID-19, and this was not in fact true.

RESPONSE: Denies.

28. Bingham then demanded an additional $24,000.00 from the McHughs, by

expressly threatening to discontinue the work if he did not receive it. Again, Bingham needed this money to continue to fund his living expenses and moving expenses, and had no intention of using it for work on the McHughs' project.

RESPONSE: Denies.

29. The Mchughs reasonably feared that if they did not immediately fund the second payment, Bingham would not complete the contract, and this contributed to their decision to pay Bingham the additional $24,000, even though it was not yet then due.

RESPONSE: Denies.

30. Defendant then abandoned the project. Specifically, on or about June 26, 2021, Randy Bingham flat out refused to perform further work of a general Contractor as to the Lemont Home.

RESPONSE: Denies.

## FIRST CAUSE OF ACTION: EXCEPTION TO DISCHARGE UNDER SECTION 523(A)(2)

1-30. McHughs hereby incorporate paragraphs 1-30 above as and for paragraphs 1-30 of this Count.

RESPONSE: Defendant restates his responses to Paragraphs 1-30.

31. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

815 ILCS 505/2.

> RESPONSE: Paragraph 31 is a mere repetition of the wording of a statute and not a short and plain statement of a claim, and should be stricken.

32. The McHughs are each a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively, and Defendant's remodeling activities for Plaintiffs are "trade" and "commerce" as defined by 815 ILCS 505/1(f) of the ICFA.

> RESPONSE: Paragraph 32 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

33. Illinois law requires that "any home repair or remodeling contract over $1,000, a person engaging in the business of home repair and remodeling is required in Illinois to provide the customer with a copy of the 'Home Repair: Know Your Consumer Rights' pamphlet." 815 ILCS 513/20(Lexis, 2021).

> RESPONSE: Paragraph 33 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

34. Defendant engaged in commerce in the State of Illinois by contracting with McHughs for Home Repair or Remodeling on the Lemont Home project. Defendant represents that he provides general contracting services for renovation and remodeling, which is an activity within the stream of commerce and utilized in their regular course of business and is therefore governed by the Illinois Consumer Fraud and Home Repair and Remodeling Acts.

> RESPONSE: Paragraph 34 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

35. Defendant violated 815 ILCS 505/2 by engaging in an unfair acts and practices,

in attempting to induce McHughs into hiring Defendants, and then to induce McHughs to overpay Defendants for work he had no intention of actually performing and materials he had no intention of actually purchasing.

>RESPONSE: Paragraph 35 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

36. It was unfair for Defendant to deceive McHughs to secure the work.

>RESPONSE: Denies.

37. Defendant's conduct induced the McHughs to pay him for work he had nointention of ever performing, and for materials he had no intention of ever purchasing.

>RESPONSE: Denies.

38. Defendant's unfair conduct is against public policy because it violates the Illinois Home Repair and Remodeling Act 815 ILCS 513/20, in that Defendants sought a contract for home repair and remodeling in excess of $1,000 and Defendants failed to provide the Attorney General's "Know your Rights" pamphlet.

>RESPONSE: Denies.

39. In addition, at all relevant times, the Village of Lemont required contractors working within its boundaries to obtain and maintain certain insurance coverages:

>(a) Contractors must maintain sufficient insurance to protect the interests of the property owner and the community during the work. All insurance must be placed in financially responsible companies that are authorized under the insurance laws of Illinois to do business in the State of Illinois. Minimum coverage should include the following types of insurance in the following amounts:(1)Worker's compensation and employee's liability: not less than $100,000.00 per person;(2)Comprehensive public liability: not less than $250,000.00 for injuries, including accidental death to any person, and subject to the same limits for each person, in an amount of any one accident;(3)Property damage: not less than $100,000.00 for damage to property in any one accident with an aggregate limit of not less than $300,000.00.(b)Insurance coverage should be verified with a

certificate from the contractor's insuring agent and list the village as a certificate holder. Lemont, Illinois Municipal Code Ordinance 5.14.060 (Ord. No. O-17-14, § 2, 3-242014).

RESPONSE: Paragraph 39 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

40. Lemont, Illinois Municipal Code Ordinance 5.14.060 is a consumer protection statute.

RESPONSE: Paragraph 40 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

41. On information and belief, at no relevant time did Defendant possess insurance in conformance with Lemont's requirements.

RESPONSE: Paragraph 41 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

42. At all relevant times, the Village of Lemont required contractors working within Lemont obtain a contractor license:

> (a)It is unlawful to engage in business as a contractor within the village without first having obtained a contractor license, as hereinafter provided. (b)For every construction permit issued, the general contractor and all subcontractors on the job shall be licensed with the village and pay the license fee as provided in this chapter. All contractors must provide proof insurance and bond as provided in this chapter. (c)Exceptions include: (1) Any homeowner as defined in this chapter shall not be required to obtain a contractor's license for doing work on his or her own residence. With the exception of new construction projects whereas the homeowner will be required to adhere to all requirements as a general contractor. Lemont, Illinois Municipal Code 5.14.020, (Ord. No. O-17-14, § 2, 3-24-2014).

RESPONSE: Paragraph 42 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

43. Lemont, Illinois Municipal Code Ordinance 5.14.020 is a consumer protection

statute.

> RESPONSE: Paragraph 43 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

44. On information and belief, at no relevant time did Defendant possess a contractor license in conformance with Lemont's requirements.

> RESPONSE: Paragraph 44 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

45. 815 ILCS 505/2Q(b) requires Contractors in the business of home repair to notify their customers of their relocation of their business within 10 days.

> RESPONSE: Paragraph 45 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

46. Defendant moved his business out of state during the pendency of the contract and failed notify McHughs at all. Bingham's violation of 815 ILCS 505/2Q(b) delayed the project at McHughs' Lemont Home and caused or directly contributed to all of the numerous failures of Bingham's performance.

> RESPONSE: Denies.

47. On or about May 7, 2021, Defendant had already formed a limited liability company in Florida under the name "Bingham, LLC", listing himself as registered agent at the address in Venice, Florida, where his wife now resides.

> RESPONSE: Admits.

48. The McHughs were substantially harmed by Defendant's deceptive practices.

> RESPONSE: Denies.

49. Defendant made each of the following false material misrepresentations to McHughs in order to induce them to give him money:

a. On April 16, 2021, at the McHugh Home, in oral conversations with John McHugh and in the contract, Defendant Bingham represented he would use the first $24,000 payment to start work on the project and order materials, including installation of concrete work for the project;

b. On April 16, 2021, at the McHugh Home, Bingham orally represented to John McHugh he was a licensed contractor;

c. On April 16, 2021, and at several times throughout the parties' relationship before the second payment, Defendant Bingham represented he had workers willing to work who were ready, willing, and capable of performing the agreed scope in a workmanlike manner;

d. On April 16, 2021, and at several times throughout the parties' relationship before the second payment, Defendant Bingham represented he could and would assume the permit;

e. At that time Defendant Bingham represented he could perform the scope of work contemplated by the agreement;

f. On May 14, 2021, Bingham represented he would use the Second payment of $24,000, the McHughs were to make payable to Travis King to order materials and to substantially complete their project.

g. On May 4, 2021 via text message, Randy Bingham represented to Plaintiff Lisa McHugh, that framing materials had been ordered and would be delivered soon, but this was untrue;

h.  On June 8, 2021, Randy Bingham represented to John McHugh that material, being pavers had been ordered and would be delivered soon, but this was also untrue.

RESPONSE: Denies.

50. Bingham made each of these misrepresentations and material omissions with the intent that the McHughs rely on them.

RESPONSE: Denies.

51. In the alternative to the preceding paragraph, each of the above representations were made in the context whereby the speaker, Randy Bingham, could reasonably infer that the listeners, Lisa and John McHugh, would rely thereon when deciding whether to hire Bingham and to pay him as alleged herein.

RESPONSE: Denies.

52. Each of the above misrepresentations and omissions were actually relied upon by McHughs, to their detriment, in that they then hired Defendant and paid him $48,000 and his excavator $3,000.

RESPONSE: Denies.

53. As of May 15, 2021, McHughs were still unaware that Randy Bingham had moved to Florida, and Randy Bingham's failure to reveal this fact amounts to a material omission of fact.

RESPONSE: Denies.

54. Defendant never actually intended to perform his role as general contractor. All misrepresentations and omissions of material fact alleged in this count were part of a

concerted scheme of promissory fraud to induce the McHughs to hire Bingham and then pay him a total of $48,000.

RESPONSE: Denies.

55. Under Section 523(a) of the Bankruptcy Code, 11 U.S.C. §523(a), a bankruptcy discharge does not discharge an individual debtor from any debt—

> (2)for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A)false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...

RESPONSE: Paragraph 55 is a mere repetition of the wording of a statute and not a short and plain statement of a claim and should be stricken.

56. To establish a prima face case of fraud under 11 USC Sec. 523(a)(2)(A), plaintiff must show that the defendant made a misrepresentation, that it was material, that plaintiff relied on that misrepresentation, that the reliance was reasonable, that the misrepresentation caused a loss to the Plaintiff.

RESPONSE: Paragraph 56 constitutes a legal conclusion and not a short and plain statement of a claim and should be stricken.

57. As alleged above, defendant made a number of misrepresentations to the McHughs which they justifiably relied upon to their detriment.

RESPONSE: Denies.

58. The McHughs reasonably relied on Defendant's misrepresentations to their detriment and they have incurred actual, compensatory, and punitive damages as a result of the Defendant's actions and inactions.

RESPONSE: Denies.

59. Defendant's actions caused a loss to Plaintiffs in contravention of 11 USC Sec. 523(a)(2).

RESPONSE: Denies.

## SECOND CAUSE OF ACTION; EXCEPTION TO DISCHARGE UNDER SECTION 523(A)(4)

The Court entered an order dismissing the Second Cause of Action [Count II] on September 5, 2022.

## THIRD CAUSE OF ACTION; EXCEPTION TO DISCHARGE UNDER SECTION 523(A)(6)

The Court entered an order dismissing the Third Cause of Action [Count III] on September 5, 2022.

## FOURTH CAUSE OF ACTION; DENIAL OF DISCHARGE UNDER SECTION 727(a)(4)(A)

1-5. McHughs hereby incorporate paragraphs 1-5 above as and for paragraphs 1-5 of this Count.

RESPONSE: Defendant restates his responses to Paragraphs 1-5.

6. On February 14, 2022, Debtors filed Schedules A, B, C, D, E, F, G, H, I and J under oath.

RESPONSE: Admits.

7. In Schedule B, debtors listed a single bank account holding the amount of $135.88.

RESPONSE: Admits.

8. On 1/4/2023, Plaintiffs issued a subpoena to Defendant's bank, BMO Harris. This subpoena sought financial records of defendants.

RESPONSE: Admits.

9. The records produced by BMO Harris reveal that defendant, as debtor, along with his co-debtor spouse, have not been truthful in several of their bankruptcy schedules. Among other things, the BMO Harris records show the following:

    a.    Debtors list only one extant bank amount as of the Petition Date in their Schedule B; BMO records had at least 3 bank accounts, including an undisclosed UTMA account for one of debtor' children;

    b.    Debtors have not been truthful in their Schedule I disclosures of income. For example, in Debtor Randy Bingham's Chapter 7 Statement of Current monthly Income, he lists gross income in December for his business in the amount of $45,596.50, and expenses of $61,989.90. However, his bank statements for the same month show at least $54,303.62 in deposits, and do not document anywhere near $61,989.90 in business expenses. Many of the withdrawals from the two accounts–one of which is not even disclosed in the petition– are related to personal expenses, or were payments made by the defendant to cover business loans he had previously taken out, and thus do not represent ongoing business expenses.

    RESPONSE: Denies.

10. Section 727 of the U.S. Bankruptcy Code, 11 U.S.C. §727, states, in relevant part:

(a)The court shall grant the debtor a discharge, unless—
(4) the debtor knowingly and fraudulently, in or in connection with the case—
(A)    made a false oath or account...

    RESPONSE: Paragraph 10 is a recitation of a statute and not a short and plain statement of a claim and should be stricken.

11. Debtors have made false statements in their Bankrutpcy schedules, and should be denied a discharge.

    RESPONSE: Denies.

## FIFTH CAUSE OF ACTION; DENIAL OF DISCHARGE UNDER 727(a)(3)

1-5. McHughs hereby incorporate paragraphs 1-5 above as and for paragraphs 1-5 of this Count.

RESPONSE: Defendant restates his responses to Paragraphs 1-5.

6. On February 14, 2022, Debtors filed Schedules A, B, C, D, E, F, G, H, I and J under oath.

RESPONSE: Admits.

7. On October 18, 2022, Plaintiffs served defendant with written discovery requests on defendant Randy Bingham. Among other things, defendant was requested to produce various business and financial records.

RESPONSE: Admits.

8. On or about March 8, 2023, defendant Randy Bingham produced limited documents, and answered that he had none of the following records:

No contracts with the McHughs

No proposals, project schedules, progress reports, or other documents which relate to the project at issue in this case;

No lien waivers or sworn GC statements; No time sheets or other work records

No records of material purchased or agreements with subcontractors; No operating agreement or bank statements

RESPONSE: Admits that Defendant produced the stated responses, but states that he has subsequently produced additional documents as requested by Plaintiff.

8. Defendant Randy Bingham's emails also make reference to various records he once claimed to have, and now says he does not have. For example, he produced several emails he sent to Plaintiffs' previous attorney in which he stated that he had documents substantiating $30,000.00 in expenses; he now claims he has no such records.

RESPONSE: Admits that the emails are correctly described, but states that he has subsequently produced additional documents.

9. Defendant Randy Bingham produced no bank statements and no explanation as to why not. The request for production sought "All bank statements from any of its bank accounts from 2020-2022." Mr. Bingham testified at his 341 meeting that he had a bank account in the name of Bingham Construction Services LLC which was in the negative.

RESPONSE: Denies.

10. Section 727(a)(3) of the United States Bankrutpcy Code, 11 U.S.C. §727(a)(3), states:

(a)The court shall grant the debtor a discharge, unless—
(2)the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;...

RESPONSE: Paragraph 10 is a recitation of a statute and not a short and plain statement of a claim and should be stricken.

11. Debtors have either concealed, destroyed or failed to keep records from which their true financial condition and business operations may be ascertained.

RESPONSE: Denies.

WHEREFORE Defendant prays that this adversary proceeeding be dismissed; for judgment in his favor and against Plaintiffs on all counts; for the award of fees and costs; and for

such other and further relief as this honorable Court may deem meet.

                                                                                      Respectfully submitted,
                                                                                      Randy Bingham


                                                                                      By:___/s/ David P. Lloyd_____

David P. Lloyd
David P. Lloyd, Ltd.
615B S. LaGrange Rd.
LaGrange IL  60525
708-937-1264
Fax: 708-937-1265